**STATE of Missouri, ex rel. Jeramy ALLISON, acting as Next Friend of Hunter Allison, a minor, and Lisa Allison, Relators,**

v.

**The Honorable David B. MOUTON, Judge of the Circuit Court of Jasper County, Missouri, Division III, Respondent.**

**No. SD 28608.**

Missouri Court of Appeals,
Southern District,
Division One.

March 25, 2009.

Glenn R. Gulick, Jr., Joplin, MO, for Relators.

William J. Lasley, Carthage, MO, for Respondent.

Chuck Dysart Brown, Joplin, MO, for Defendant.

JEFFREY W. BATES, Judge.

Jeramy and Lisa Allison (hereinafter referred to individually by their given names and collectively as Relators) sought prohibition to prevent the Honorable David Mouton (Respondent) from enforcing an order requiring Jeramy to execute an authorization allowing the release of Lisa's medical records relating to the prenatal care, pregnancy and birth of the couple's son, Hunter Allison (Hunter). This Court issued a preliminary order in prohibition. Because the trial court used an improper procedure to compel production of a non-party's privileged medical records, our preliminary order is now made absolute.

## I. Factual and Procedural Background

This discovery dispute arises out of a July 2005 lawsuit that was filed in the

Circuit Court of Jasper County, Missouri against Michael Carman, Judy Carman, Marsha Adams and Integrity Realty (collectively referred to as Defendants). The plaintiffs in that suit were Hunter, by his next friend Lisa; and Jeramy and Lisa, individually. In general terms, the petition alleged that the Allison family had resided at a premises owned or managed by Defendants from March 2003 to June 2005. During that time period, Hunter allegedly developed lead poisoning due to Defendants' failure to remove or abate paint containing dangerous levels of lead from the premises. The lead poisoning allegedly resulted in physical and cognitive injuries to Hunter, lost earnings or earning capacity and attendant medical expenses.[1]

In December 2005, defendants Michael and Judy Carman (the Carmans) propounded interrogatories to the plaintiffs. Interrogatory No. 21 asked:

> Did Lisa Allison regularly see an obstetrician or any other doctor, hospital, clinic or nurse practitioner while she was pregnant with Hunter Allison? If so, please state the name and address of each such physician or obstetrician, or clinic or nurse practitioner or hospital where Lisa Allison sought prenatal care while pregnant with Hunter Allison.

Plaintiffs objected to this interrogatory on the ground that it sought information regarding Lisa's medical treatment that was protected by the physician-patient privilege.

The parties were able to agree upon the form of an authorization to obtain Hunter's medical records, and Defendants did so. Hunter was born in May 2000. One January 2005 record from Dr. DiAnn Hunter stated:

> I am writing to confirm that I have followed [Hunter] for developmental delays. His current working diagnosis is Pervasive Developmental Disorder, a form of autism. This diagnosis was made by a pediatric neurologist.
>
> I have also seen [Hunter] in relation to the elevated lead level that was discovered on a Head Start evalution. It was reported to me that the initial level in October 2004 was 22.5 mcg/dl. The follow up level that we did in early January 2005 was 18 mcg/dl.
>
> It is known that elevated blood levels can be associated with hearing and behavior problems. There is no clear cut-off for the appearance of problems in relation to blood lead levels, but it is most likely observed in children who have reached levels of 20 mcg/dl. And it is not clear how much the problems will resolve with lowering of blood lead levels.

In September 2006, the Carmans filed a motion to compel answers to interrogatories, including No. 21, and a motion requesting Lisa to execute a medical authorization. The latter motion alleged that, by filing a suit claiming physical and cognitive injuries to Hunter, Lisa had waived her own physician-patient privilege to all of her medical records created while Hunter was *in utero*. The only legal authority cited in support of the request was the New York case of *Lamy v. Pierre*, 31 A.D.3d 613, 818 N.Y.S.2d 610 (N.Y.App. Div.2006). The motion also alleged that Hunter's "cognitive disorders may have been caused by a birth defect or prenatal

---

1. The only individual recovery sought by Jeramy and Lisa was for Hunter's loss of services and medical expenses during his minority. *See Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995) (holding that that an injury to a child gives rise to a common law cause of action on behalf of the parents to recover for loss of services during minority and the expense of treatment).

accident or injury." The motion included neither a factual explanation for that assertion nor any evidentiary material (e.g., an affidavit) from a qualified medical expert explaining how that could be true. The medical authorization attached to the motion would have permitted the Carmans to obtain the following medical information about Lisa:

[A]ll information, including, but not limited to: records, x-rays, correspondence, consultation reports, lab reports, prescriptions, medication lists, nurses notes, and telephone memos, relating to the **prenatal care and birth of Hunter Allison, and any records regarding the pregnancy of Lisa Allison from August 1, 1999 to June 1, 2000**. . . .

All records specified above INCLUDING the following:

[X] Those relating to care and treatment for mental health conditions which have manifested in complaints to the above-described parts of [Lisa's] body;

[X] Those relating to care and treatment for drug or alcohol abuse which have manifested in complaints to the above-described parts of [Lisa's] body;

[X] Those relating to HIV testing, infection status, or care and treatment for AIDS which have manifested in complaints to the above-described parts of [Lisa's] body.

In October 2006, a hearing on the Carmans' medical authorization motion was conducted before the original trial judge in this matter, the Honorable Jon Dermott. A copy of Dr. DiAnn Hunter's medical record was provided to the court at the hearing. Judge Dermott granted the motion and ordered Lisa to execute the attached medical authorization. The court gave the following explanation for its ruling in a docket entry:

The final dispute between the parties concerns defendants' request for a medical authorization from [Lisa], the mother of the minor plaintiff. Plaintiff mother objects because her medical condition is not directly in issue and she, therefore, says she has not waived her medical privilege. Defendants say mother's medical condition is in issue with regard to the period of her pregnancy with the minor plaintiff, this being a derivative action as to mother. No Missouri case authority is cited by the parties, although defendants cite a state court of New York case based upon similar facts, *Lamy v. Pierre*, 818 N.Y.S.2d 610. In that case there was also an affidavit indicating mother's condition was relevant. Here, there is no such affidavit but rather a portion of a medical report indicating the minor may have had a form of autism, Pervasive Developmental Disorder, predating the present claim. In this situation the Court will follow the lead of the New York case which states, "While the mother did not waive the physician-patient privilege with respect to her own medical history by commencing this action in a representative capacity on behalf of the infant and derivatively on her own behalf, she is not entitled to assert that privilege with respect to medical records 'pertaining to the period when the infant plaintiff was in utero, during which time there could be no severance of the infant's prenatal history from his mother's medical history'."

Because the issue was not settled in Missouri, the court stayed the enforcement of the order so Lisa could seek a writ of prohibition.

Judge Dermott retired and was replaced by Respondent. In April 2007, another hearing on discovery matters was held. The Carmans filed a motion to compel Lisa

to execute the medical authorization and a motion for sanctions because she had neither sought extraordinary relief nor signed the authorization. Respondent took both motions under advisement. In May 2007, Respondent denied the motion for sanctions and ordered Lisa to execute the Carmans' proposed medical authorization within 30 days. Shortly after this hearing, Lisa voluntarily dismissed her individual claim against Defendants. She also filed a motion requesting that Jeramy be substituted as next friend for Hunter. Respondent granted that motion.

In July 2007, Defendants filed a motion requesting that an authorization be executed that would permit them to obtain copies of Lisa's medical records relating to the prenatal care, pregnancy and birth of Hunter. This motion, however, requested that Jeramy be ordered to sign the authorization. Jeramy objected on the ground that he did not have the legal right or authority to execute any authorization for Lisa's medical records. Respondent granted the motion and ordered Jeramy to execute the authorization within 30 days.

Relators filed a petition requesting the issuance of a writ of prohibition, and this Court issued a preliminary order.

## II. Standard of Review

◼ "Prohibition is the proper means to contest the enforcement of discovery of allegedly privileged information." *State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 408 (Mo. banc 1996). If the medical records at issue are privileged, production of those records during discovery will cause severe and irreparable damage that cannot be repaired on appeal. *Id.*; *see State ex rel. Peabody Coal Co. v. Clark*, 863 S.W.2d 604, 608 (Mo. banc 1993).

## III. Discussion and Decision

◼ Relators present four points on appeal, but our discussion is confined to Point I since it is dispositive. In that point, Relators contend Respondent should be prohibited from enforcing its order requiring Jeramy to execute a medical authorization that purports to permit the release of Lisa's privileged medical records to Defendants pursuant to a medical authorization signed by Jeramy. This Court agrees.

*Lamy v. Pierre*, 31 A.D.3d 613, 818 N.Y.S.2d 610 (N.Y.App.Div.2006), was the exclusive authority upon which Respondent relied in ordering Jeramy to execute the authorization. For two important reasons, that opinion provides no support for Respondent's decision.

In *Lamy*, a minor child sued to recover damages for cognitive and behavioral defects allegedly caused by the child's ingestion of lead-based paint while residing in a building owned by the defendants. *Id.* at 611. Defendants requested that the child's mother be required to provide a written authorization allowing defendants to obtain copies of the medical records pertaining to the mother's treatment during the pregnancy and birth of the child. The trial court denied relief, and the defendants appealed. *Id.* The appellate division held that the trial court should have granted defendants' request that the mother be required to execute an authorization because "the affidavit of the defendants' medical expert established that the mother's medical records relating to the infant's gestation and birth were material and necessary to the defense of this action...." *Id.* at 612.

The first reason *Lamy* does not support Respondent's decision is that none of the Carmans' medical authorization motions were supported by the affidavit of a qualified medical expert explaining why and

how Lisa's prenatal, pregnancy and birth records were material and necessary to the defense. The trial court specifically noted that omission in its docket entry. Dr. DiAnn Hunter's January 2005 record was the only medical information before the court. The trial judge interpreted this record to mean that Hunter's Pervasive Development Disorder (PDD) predated his exposure to lead paint on Defendants' premises, but nothing in the record explicitly supports that conclusion. Dr. Hunter described that diagnosis as the "current" one and did not state when it was made. Moreover, Dr. Hunter's record did not explain whether there is, or is not, a relationship between the child's documented exposure to lead and his PDD. Finally, nothing in Dr. Hunter's record set forth any basis to reasonably conclude that Lisa's prenatal, pregnancy and birth records would shed any light whatsoever on either the cause of Hunter's lead exposure or his PDD. Thus, *Lamy* does not support Respondent's decision.

The second reason that *Lamy* does not support Respondent's decision is that the procedure approved in that case for obtaining the mother's medical records is incompatible with controlling Missouri law. At this point, Lisa is not a party to the underlying lawsuit. The voluntary dismissal of her derivative claim was effective on the date it was filed, and this Court must view the case as though Lisa's claim had never been filed. *See Richter v. Union Pacific R.R. Co.*, 265 S.W.3d 294, 297 (Mo.App.2008); *State ex rel. Fortner v. Rolf*, 183 S.W.3d 249, 251–52 (Mo.App. 2005). Nevertheless, the physician-patient

privilege is not absolute. *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 567 (Mo. banc 2006). "The circumstances, facts and interests of justice determine the applicability of the physician-patient privilege to a particular situation." *State ex rel. Lester E. Cox Med. Ctr. v. Keet*, 678 S.W.2d 813, 815 (Mo. banc 1984). In *State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407 (Mo. banc 1996), our Supreme Court held that the compulsory production through discovery of a nonparty's medical records is limited in two important respects. First, a judge can only order discovery of a nonparty's medical records if they are relevant to a pending claim, and adequate safeguards are provided to protect the nonparty as much as possible. *Id.* at 410. Second, the only proper procedure to compel discovery of such records is by subpoena *duces tecum. Id.* at 408; *see also State ex rel. Williams v. Lohmar*, 162 S.W.3d 131, 134 (Mo.App.2005); *State ex rel. Dixon Oaks Health Center, Inc. v. Long*, 929 S.W.2d 226, 228 (Mo.App.1996). Both of those limitations were exceeded here.

For the reasons set forth above, the preliminary order in prohibition is made absolute.

PARRISH, P.J., and LYNCH, C.J., Concur.